NETTIE WEISFELD CONNELLY, appellant,

*v.*

MAURICE WEISFELD et al., respondents.

[Submitted February 13th, 1948. Decided May 13th, 1948.]

On appeal from a decree of the Court of Chancery in which court the following opinion was filed:

"This litigation sprang directly from the administration of the estate of Isadore Weisfeld, late of the City of Camden. The individual complainant, Nettie Weisfeld Connelly, was the wife of Isadore (she had remarried), and the infants for whom she prosecutes this suit as 'next friend and general guardian,' are their children. Defendants Maurice Weisfeld and Henry Weisfeld are brothers of the decedent. The defendant David F. Greenberg, a member of the Bar, was, until decedent's death, his personal attorney. Maurice Weisfeld and David F. Greenberg are the surviving executors of decedent's estate, and the survivors of the persons designated in his will to be trustees of a testamentary trust. Henry Weisfeld was named in decedent's will to act as a trustee in the event of the death of any of the three named trustees.

"The corporate defendant, Jack's Auto Parts, Inc., was formed in 1932 by the decedent, his brother Henry and their father, Max Weisfeld, to take over and operate a business of buying and selling used automobiles and automobile parts which had been established by Isadore and later conducted by Isadore and Henry, as partners. Until his death, the decedent dominated the business and, apparently, directed the corporation and its affairs as a family enterprise; withdrawals of money for compensation of officers were informally made, loans were made to members of the Weisfeld family and no interest charged, automobiles were furnished for the free use of officers, and complete books of account were not kept.

"At the time of the decedent's death there were 20 shares of corporate stock outstanding; decedent owned nine, Henry owned nine and two were owned by their sister, Sarah Weisfeld, bookkeeper for the corporation. All stock was held subject to a written agreement that if the owners proposed to sell they would afford the corporation the first opportunity

to purchase at a price to be ascertained by application of a stated formula.

"Upon the death of Isadore, his executors found that his stock in Jack's Auto Parts, Inc., was the principal asset in his estate. They believed it to be their duty to convert it into cash to provide funds for payment of the federal estate tax and to set up the trust created by decedent. Disposal of the stock posed a serious problem. There was no public market and Henry was the only person who could be expected to buy, as he alone knew the business and, with his sister, held corporate control. Immediately after his brother's death Henry had attempted to generously aid his sister-in-law and his two nieces. He offered to put complainant upon the corporation payroll and to pay her $100 per week, the allowance her husband had habitually made her. She took the money for a month; then, at a directors' meeting to which Henry had invited her, she protested a suggested reduction to $60 per week. Her attitude and words offended Henry and he discontinued her allowance.

"I should here interrupt this narrative of events to reveal circumstances which undoubtedly influenced Henry's action. Isadore had stated in his will that he had 'adequately and sufficiently' provided for his wife in his lifetime. The evidence revealed that title to decedent's home was held by the entirety, so that his widow came to own it absolutely. He had carried heavy life insurance payable to his wife and shortly after his death she received $20,177 in cash and began to receive periodic payments on account of an additional sum of $62,014.53. Henry, perhaps, thought that his sister-in-law should be able to support her two young daughters, at least until the trust could be set up for them, and she, as their mother and guardian, could have the income therefrom to assist her in that regard. It should be added that Mrs. Connelly owns no stock in the corporation.

"Notwithstanding Henry's irritation with his sister-in-law, he discussed a purchase of decedent's stock with the executors and offered them $25,000 for the nine shares. They had obtained an audit of the corporation's books and had inventoried the stock as worth $26,539.38. The executors peti-

tioned the Camden County Orphans Court for instructions. Mrs. Connelly, who was represented by able and experienced counsel, filed a 'report' as guardian *ad litem* stating that $25,000 'would represent the approximate value' of the stock and that she had 'reached the conclusion that it is for the best interest of said minors that said offer should be accepted.'

"A hearing in the Orphans Court was delayed, and two months later, when Henry received notification to report for induction into the armed forces, he withdrew his offer. He had planned to borrow the money, and there was no one trained to manage the business if he were absent. The executors then sought an offer for one share from Jack's Auto Parts, Inc., at the unit price which had been offered by Henry, $2,777.27. The corporation agreed to buy. The offer was submitted to the Orphans Court, an order was entered approving of the sale, and the corporation paid over to the executors $2,777.27. The stock has not been transferred because Mrs. Connelly appealed from the order of the Orphans Court and instituted this suit. Her appeal has not been prosecuted, and this cause was brought on for final hearing by action of the defendants, not of the complainant.

"One of the complainant's prayers herein is for a discovery by the corporate defendant of the contents of its books and records. The corporation denies that it refused to disclose its financial position and details of its operation to Mrs. Connelly, and expresses its willingness to submit its books and records for any further examination desired, and to make any additional disclosure of the operation of the corporation and its business which complainant may request. At or about the time Mrs. Connelly took her appeal and caused this suit to be instituted she sought and obtained the permission of the corporation to have a second public accountant examine and audit its books. The examination and an audit were promptly completed; the statement of that auditor is in evidence.

"The bill of complaint filed is obviously multifarious and the causes of action are not separately stated or separately numbered as required by rule 60 of this court. However, the defendants have not objected to this feature of the bill and the case will be determined upon the merits.

"At least five asserted, but unconnected, causes of action may be discovered in the general statements of the bill: (1) one against the individual defendants for alleged fraud in conspiring and endeavoring to force a sale of decedent's corporate stock for less than its true value; (2) one against the same defendants for alleged negligence as fiduciaries; (3) one against the corporate defendant for alleged improper refusal to declare dividends; (4) one against the defendants Henry and Maurice for receiving allegedly excessive compensation as corporate officers; and (5) one for the construction of the will of Isadore touching responsibility for payment of estate taxes on the proceeds of life insurance policies written for him. Complainant also seeks to have the Court of Chancery take complete jurisdiction of the administration of the decedent's estate and of the testamentary trust and asks that this court order the corporation to declare and pay a dividend.

"(1 and 2)—Fraud and negligence of the fiduciaries: Henry and Maurice Weisfeld, and David F. Greenberg, are charged with having conspired to conceal the true value of decedent's stock so that the nine shares could be acquired by Henry for less than their true value. Henry and Maurice are charged with having prevented a declaration of dividends by the corporation to effectuate the same result.

"Fraud, as a fact, will never be presumed; it must always be clearly and convincingly proved, *Pahy* v. *Pahy* (*Court of Errors and Appeals*), *107 N. J. Eq. 538, 540;* *The Trust Company of Orange* v. *Garfinkel* (*Court of Errors and Appeals*), *107 N. J. Eq. 20, 23,* and the burden of proving fraud rests upon the party who asserts it, *Guerber Engineering Co.* v. *Stafford* (*Court of Errors and Appeals*), *96 N. J. Law 280; 114 Atl. Rep. 747.*

"The relief prayed against Henry, because of his alleged fraudulent conduct, is that he be discharged as an executor and as a trustee. Complainant also prays the discharge of Maurice Weisfeld and David F. Greenberg as trustees; their discharge as executors is not asked, although to date, they have acted only as executors, not as trustees. Henry could not be discharged as an executor; he was not named as an executor by the decedent. Henry's father having died, he

did file an acceptance of the substitutionary trusteeship but, before the trustees had received any trust-property to administer and before his offer to purchase the nine shares of stock was submitted to the court, he filed his formal 'renunciation' of the trusteeship.

"Maurice Weisfeld is a dentist, practicing at Sayreville, New Jersey. He has only been connected with the corporation since the death of Isadore; he was elected a director to represent the estate.

"Maurice Weisfeld and David F. Greenberg were selected by the decedent to be his executors and trustees and Henry Weisfeld was selected by the decedent to be a trustee in the event of the decease of a named trustee. Where a decedent has chosen and designated persons to act as fiduciaries respecting his estate, this court acts with reluctance to remove them from office. *Restatement, Trusts,* ¶ *107 F.* And, so long as an executor or trustee acts in good faith, with ordinary discretion and within the scope of his powers, his acts cannot be successfully assailed. *Heisler* v. *Sharp (Prerogative Court), 44 N. J. Eq. 167, 172; 14 Atl. Rep. 624; affirmed, 45 N. J. Eq. 367; 19 Atl. Rep. 621.* As was said by the Vice-Ordinary in the cited case: 'No man is infallible; the wisest make mistakes; but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty.'

"David F. Greenberg is not a director of the corporation and he has had no control whatever over its corporate acts. After decedent's death the corporation was operated in much the same manner that it had been operated by decedent. Henry Weisfeld managed it and its business. Mr. Greenberg had no part in the conduct of that business. While Maurice was made a director of the corporation in order that the executors and trustees might be represented on that body, he has never taken an active part in the business of the corporation; he has been able to do little more than attend directors' meetings because of the location of his home and office, distant from Camden.

"It seems quite obvious that Mrs. Connelly has entertained the notion that she or her children have some justiciable claim against Henry because he refuses to purchase decedent's nine shares of stock at what she conceives is its true worth. It is equally obvious that no such claim exists. In instituting this cause, Mrs. Connelly not only made claims on behalf of her children, but asserted similar claims as an individual. As such she had no justifiable status in this cause.

"When the executors decided to sell the decedent's stock the corporation had the right under the stockholders' contract to purchase it. The estimated value fixed by the executors was $26,539.38. Henry offered $25,000. In his testimony he frankly admitted that this offer was for an amount somewhat less than the actual value of the stock and the sum which the corporation would have been called upon to pay under the stockholders' contract if it had exercised its option to purchase. Complainant does not suggest that the corporation should have purchased the stock under the formula set forth in the contract, or that Henry should have offered to buy in accordance therewith. She uses the formula, nevertheless, to attain a figure which she declares demonstrates that the value of the stock was much greater than the price offered by Henry.

"Complainant blows hot, blows cold. She seeks to have Henry discharged as a trustee but refuses to accept his renunciation. She seeks a court decree declaring him unfit to act as a trustee notwithstanding the fact that he has not yet sought that office, and has renounced his right to it. She has antagonized and she continues to antagonize the one person who could and would buy decedent's stock and make it possible to set up the trust.

"Mrs. Connelly argues that the executors and trustees failed to force the corporation to maintain proper records and to collect principal and interest on outstanding loans made by it to stockholders, and that they failed to force it to declare dividends. The trustees have never held stock, and neither Maurice nor David F. Greenberg own stock in the corporation. The infants have no greater right than had their father at the time of his death, and he made or accepted the records,

made the loans and agreed that they should bear no interest. The executors accepted the records that had been made under the direction of the decedent, and an audit made by the accountant decedent had employed.

"July 31st, 1937, and while the corporation was managed by Isadore, it made a loan to Maurice of $5,000. No demand was ever made for payment and no interest was ever charged on the loan. May 28th, 1939, the company made a loan of $7,000 to Sarah; this was secured by bond and mortgage but payment was never requested by Isadore and no interest was ever demanded or paid. Complainant now argues that these loans should have been collected immediately following the death of Isadore, and with lawful interest back to the date the loans were made. The amount of these loans, with interest, complainant says, should be included in a list of corporate assets to fix the value of decedent's stock; also she would include the value of a small home on Rand Street, in Camden, occupied by Henry. Title to this property is in the name of the corporation, but Henry claims to be the owner, declaring that he paid the full consideration for the property in two payments to the corporation, one of $500 and one of $3,000. His bank pass book discloses a withdrawal of $3,000 in cash at the time of the purchase, and for many years before the death of Isadore Henry lived in this property and paid no rent.

"Complainant also calls attention to the fact that in the books of the corporation is an entry indicating a loan to Henry of $4,700. The company auditor testified that the loan entry was preceded by a cash receipt entry of $4,700, that amount having been deposited in the corporation's bank account. Henry testified that when he and Isadore were equal partners in the business, Isadore drew a much greater sum from the company than Henry; that when he called this to Isadore's attention Isadore offered Henry $4,700 in cash from his own funds, but requested that the money be loaned to the corporation to provide capital for purchasing automobiles of the State Motor Vehicle Department, then about to be sold, and shown upon the books as a loan made by Henry to the corporation. However this may have been,

Isadore made the entries or accepted them and they continued to indicate a debt due Henry until the death of Isadore. The complainant adds this figure to her list of assets. Furthermore, she would have the court read fraud into the transaction, and into all the other recited transactions had between officers and the corporation. The evidence would not warrant such a finding. All during Isadore's management of the corporation he and his brother Henry took what money they needed from the corporation, had their withdrawals noted upon the books and, with the aid of the company auditor, attempted to balance accounts at the end of the year.

"Another item in complainant's set of figures to fix the value of decedent's stock concerns a life insurance policy on the life of Henry. The policy is in a most unusual and confusing form. It provides that the insurance company will pay to Henry, if he be living on May 24th, 1962, $18,901.50 and, if Henry die before that maturity date, the sum of $10,000, or the cash value of the policy at the date of death, whichever is greater, to Jack's Auto Parts, Inc. If Henry be living at the maturity date an annuity will be paid, if desired, rather than cash, but, strangely enough, the policy reads that the corporation, not Henry, is to exercise that option. If the full sum of $18,901.50 has not been paid at the time of Henry's death, any balance is to be paid to Jack's Auto Parts, Inc. The policy also provides that it may be surrendered by Jack's Auto Parts, Inc., for its cash value at any time after premiums have been paid for three full years. Isadore never made any attempt during his lifetime to have the corporation borrow on this policy or to have it surrendered, and Henry testified that he, personally, paid the premiums for this insurance. He produced a number of receipts showing payments made by him; he could not produce all receipts, he said, because he had lost many of them. From out all this, complainant argues that the cash value of the insurance policy as of April 27th, 1945, was $12,720.84 and that this sum should be included as an asset item in judging the worth of the corporation and the value of its stock. But, of this $12,720.84, $7,095 represents the net refund of premiums paid from May, 1945.

"Judged by the principles just stated, it seems to me entirely clear, that the complainant has failed to produce evidence sufficient to warrant a finding that Henry Weisfeld, Maurice Weisfeld or David F. Greenberg have been guilty of the fraud, or of the negligence charged against them.

"Another charge of the complainant before final hearing was that the corporation had invested $8,000 in United States Government bonds, and that ownership of these bonds had not been revealed by Henry or Maurice. Complainant adds $8,000 to her list of assets of the corporation in arriving at a figure suggesting that decedent's stock was worth double what Henry offered. The evidence satisfies me, however, that the several transactions involving $8,000, between the Government of the United States and the corporation, were not bond purchases but were purchases, by the corporation, of used government automobiles.

"(3)—Corporation dividends: The complainant maintains that the executors should have forced the corporation to declare a dividend, and that this court should now, by decree, compel such action. The question of the declaration of a dividend by a corporation and its amount, time and terms of payment, are entirely within the honest discretion of its board of directors and, in the absence of a proven abuse of that discretion, equity will not interfere. *Hyams* v. *Old Dominion Copper, &c., Co.* (*Court of Chancery*), *82 N. J. Eq. 507, 515; 89 Atl. Rep. 37; affirmed, 83 N. J. Eq. 705; 91 Atl. Rep. 1069. R. S. 14:8–20* specifically provides that the directors of a corporation 'may, in their discretion, from time to time, fix and vary the amount of the working capital of the corporation and determine what, if any, dividends shall be declared and paid to stockholders out of its surplus or net profits.'

"Mrs. Connelly does not hold any stock of the corporation either as an individual or as guardian for her children. The executors of decedent's estate who presently hold his stock in the corporation are not urging the declaration of a dividend. They suggest that payment of a dividend at this time would but lessen the value of decedent's stock and their chances of selling it. Henry, as an officer and a director of

the corporation, and as the active manager of its business, opposes the declaration of a dividend on the ground that such action would be ill-advised in view of the uncertainties which have attached to the corporation's business during the war years and will probably continue throughout the period of readjustment. He is substantiated by the testimony of Isadore Kahlowsky, the auditor. It appears that in 1942 the War Production Board, an agency of the United States Government, required the corporation to dispose of 85% of all its stock for scrap purposes. With its inventory so radically reduced, it seems logical that the corporation should have conserved its liquid resources for reinvestment in the purchase of other stock when stock became available. Sales by the corporation in 1941 attained a total of $110,484.17, but in 1944 its sales totaled only $54,459.37, and for that year the company suffered a net loss of $649.29. This court would not, in any event, substitute its judgment on the question of declaring dividends for that of the board of directors unless there was before it clear evidence of willful refusal by the directors to recognize the rights of stockholders. Such evidence is not before the court.

"Complainant has overlooked other prerequisites to any order by this court directing the declaration of corporate dividends. Only a stockholder can complain of failure to declare dividends and, as I have said, complainant is not a stockholder. Furthermore, a direction in the premises, by this court, would have to be addressed to the members of the board of directors of the corporation. The evidence reveals that Sarah Weisfeld is a director; complainant did not make her a party to this cause. See *Murray* v. *Beattie Manufacturing Co.*, 79 *N. J. Eq.* 322; *Blanchard* v. *Prudential Insurance Co.* (*Court of Errors and Appeals*), 80 *N. J. Eq.* 209; 83 *Atl. Rep.* 220; *Laurel Springs Land Co.* v. *Fougeray* (*Court of Errors and Appeals*), 50 *N. J. Eq.* 756; 26 *Atl. Rep.* 886.

"(4) Complainant charges that Henry and Maurice, since the death of Isadore, have been drawing exorbitant salaries from the corporation. The fact is that Henry has been drawing the same compensation from the company that he drew

before Isadore's death. There is no evidence that Maurice has been paid any salary.

"(5) Construction of decedent's will touching responsibility for payment of estate taxes on life insurance proceeds paid decedent's widow: Complainant argues that decedent's will demonstrates an intention on his part that estate taxes collectible by the federal government, upon the moneys paid to Mrs. Connelly on the policies on her husband's life, should be paid from his estate and not by his beneficiary. I have read and studied the decedent's will and I can find therein no expression whatever of any intent of the decedent in this respect. See *Turner* v. *Cole* (*Court of Errors and Appeals*), *118 N. J. Eq. 497; 179 Atl. Rep. 113.*

"Should this court supersede the Orphans Court and take complete control of the administration of decedent's estate? Unquestionably this court has the power so to do. *Brown* v. *Fidelity Union Trust Co.* (*Court of Errors and Appeals*), *128 N. J. Eq. 197; 15 Atl. Rep. (2d) 788; Filley* v. *Van Dyke* (*Court of Errors and Appeals*), *75 N. J. Eq. 571; 72 Atl. Rep. 943.* However, complete and convenient machinery for the administration of estates has been provided by the legislature through the medium of our Orphans Courts, and it has been the policy of equity not to interfere with that jurisdiction except under very special circumstances. I have not been convinced that circumstances exist, in the present case, which make it necessary or expedient to have this court supersede the Orphans Court.

"Cadillac automobile: The issue respecting ownership of the Cadillac automobile was not tendered by the complainant; it was brought forward by the corporate defendant by way of a counter-claim. Mrs. Connelly then amended her bill and asserted her ownership of the chattel. She thus revealed that, while she had physical possession of the automobile, the license and title papers were held by the corporation. She prayed that her ownership be recognized and that the corporation be ordered to assign title to her. While ownership could have been determined in a law court, Mrs. Connelly could not have there obtained complete relief; the law court would not order an assignment of title.

418

"I am convinced that Mrs. Connelly's claim to ownership of the automobile has been established by the evidence. This is the last of a series of automobiles of which she has had the possession and use. Her first automobile was purchased with her own funds; subsequently, automobiles were traded in and other automobiles purchased. The Cadillac was purchased as a used car in the regular conduct of the corporation's business. Isadore handled the transaction. He took the Cadillac to his home and announced that it was a present to his wife. He then had her transfer her older automobile to the corporation. Title to the Cadillac was retained in the corporation so that cheaper (fleet) insurance could be obtained. It appeared that the corporation paid for this insurance and for license tags; that does not, in my opinion, change the picture. I am thoroughly persuaded that Isadore expected to have these items charged against him at the end of the year when the auditor was adjusting such accounts. The defendant corporation will be directed to deliver the title papers of the automobile to Mrs. Connelly and, if necessary, to transfer the license to her.

"Complainant has asked that this court discharge the trustees and appoint others in their place. Complainant has not asked the court to discharge the two executors, yet most of the complainant's case has been devoted to criticism of the conduct of the executors. I have found that the charges against the executors have not been proven and that the trustees have not functioned as such. I shall not advise that Maurice Weisfeld and David F. Greenberg be discharged as trustees. They were chosen by the testator and, as I shall advise acceptance of the renunciation of Henry Weisfeld as a trustee because he is personally so vitally interested in the corporation and still may wish or be persuaded to purchase decedent's stock, and shall advise the appointment of a trust company in his place, I do not apprehend any possible future danger to the administration of decedent's testamentary trust by their continuance in office.

"A decree in conformity with the above conclusions may be presented."

*Mr. Walter S. Keown,* for the appellant.

*Mr. Walter R. Carroll,* for the respondent Maurice Weisfeld.

*Mr. Louis B. LeDuc,* for the respondents Henry Weisfeld and Jack's Auto Parts, Inc.

PER CURIAM.

The decree appealed from is affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Woodruff.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 13.

*For reversal*—None.