**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2266-16T4
A-2932-16T4

IN THE MATTER OF THE 1990
IRVING HELSEL FAMILY TRUST.

_____

Argued November 26, 2018 – Decided February 28, 2019

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. 208888.

Monica Helsel and Samuel Helsel, appellants in A-2266-16 and respondents in A-2932-16, argued the cause pro se.

Richard J. Mirra argued the cause for respondent Mark S. Goldstein in A-2266-16 and appellant in A-2932-16 (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Richard J. Mirra, of counsel and on the brief; Nicole M. Grzeskowiak, on the brief).

PER CURIAM

These two appeals have been calendared back-to-back for the purpose of this single opinion. They both involve "The 1990 Irving Helsel Family Trust"

(the Trust), which includes the "Irving Helsel Family Trust" (Family Trust) and the "Irving Helsel Exempt Trust" (Exempt Trust). The issues on appeal involve attorney's fees, management of the trusts, removal of the co-trustees and approval of the final accounting.

In A-2266-16, we affirm the December 16, 2016 reconsideration order in which a second judge granted the parties' reasonable attorney's fees beyond the $50,000 limit set by the first judge, who had retired, because there was no abuse of discretion by the second judge.

In A-2932-16, giving deference to the factual findings of two judges as required by our standard of review, we affirm the orders of January 14, 2016, August 16, December 16, and February 1, 2017, removing defendants Monica and Frederic Helsel as co-trustees of the Family Trust; keeping them as co-trustees of the Exempt Trust; and awarding them attorney's fees to be paid by the Family Trust. We, however, reverse the March 15, 2017 order approving the final accounting and remand because the reasons why plaintiff Mark S. Goldstein's objections to the accounting were rejected were not set forth in the record.

# I

In 1990, family patriarch Irving Helsel set-up the Trust, comprised of the Family Trust and Exempt Trust. He designated his children, Frederic[1] and Bonnie, as beneficiaries of the Family Trust. To help her mitigate her lifelong battle with schizophrenia, Bonnie, who is now in her seventies, has received her share of the Family Trust since it was created. Frederic, however, had to wait until his father died in 1994 to receive his share of the Family Trust.

The Family Trust allows for distribution of the principal to Bonnie as necessary for her health, education, support and maintenance, within the discretion of the co-trustees. With respect to the Exempt Trust, Bonnie's respective share of the principal can only be distributed in extraordinary circumstances if all other sources are depleted,[2] as it is a generation-skipping trust with the balance to the benefit of Irving's grandchildren (Frederic's children), Monica and Samuel Helsel. Upon Bonnie's death, the remaining principal of the Family Trust is to be distributed to Monica and Samuel.

---

[1] Because members of the Helsel family share the same last name, we refer to them by their first names to avoid confusion and ease of reference. We mean no disrespect in doing so.

[2] The principal can only be distributed if the quarter-annual income payments are not enough to cover her healthcare costs.

A-2266-16T4

Distribution of the principal from either trust is at the discretion of their co-trustees, Fredric and Monica.

Unfortunately, due to her illness, Bonnie lost contact with her family and disappeared from 2000 to 2002, and again from 2003 to 2013. Bonnie's share of the Family Trust was held for her benefit during those periods. When Bonnie was located in 2013, she was living in a nursing home in the Bronx. In November of that year, a New York court declared Bonnie mentally incompetent and after contested guardianship appointment proceedings, New York attorney Michael S. Goldstein was appointed as Guardian of Bonnie's person and property.[3]

Four months following the New York court's order, Monica and Fredric, in their capacity as co-trustees, which they have served since 1994, filed an order to show cause and a verified complaint in the Chancery Division, seeking to clarify the parameters of the Trust because Goldstein wanted to liquidate the Family Trust to pay for Bonnie's care. In response, Goldstein filed a counterclaim against the co-trustees, seeking to have them removed as co-

---

[3] Monica, the Park Gardens Nursing Home where Bonnie resided, and Bonnie's cousin Jackie Maron and her daughter Lauren May, sought to be appointed guardian. Goldstein had no family or business connection with Bonnie.

A-2266-16T4

trustees of the Family Trust and Exempt Trust and have all their assets distributed to him as Bonnie's Guardian.

The parties' respective claims were tried before the first judge during a three-day bench trial in early October 2015. Following post-trial submissions, the judge issued a thorough nine-page single-spaced written decision on December 4, 2015, memorialized in a January 14, 2016 order, in which she considered the credibility of the witnesses and Irving's intent in establishing the Trust. The judge determined that Monica and Fredric should only be removed as co-trustees of the Family Trust, because their actions "as [t]rustees in their fiduciary capacity [for Bonnie] are definitive examples of poor judgment, but the conduct [did] not rise to intentional or malicious conduct." The judge reasoned that Monica's use of Family Trust's funds to pay her health insurance, to purchase burial plots for herself and Fredric, and to make charitable donations in lieu of taking a commission were not "disbursements . . . in accordance with the terms of the Trust or the right of the [t]rustee[s] to engage in." In Monica and Fredric's stead, the judge appointed two independent lawyers as substitute co-trustees. Monica was authorized to be a "consultant" to the substitute co-trustees. In addition, Monica and Fredric were directed to file an application for a formal accounting of the Trust within ninety days.

Additionally, the judge found there was no basis at that time to support Goldstein's request to dissolve the Trust and transfer the assets to him as Bonnie's Guardian. The judge noted there was no financial damage to Bonnie due to the trustees' conduct other than the aforementioned "errors in judgment by Monica." She also expressed concerns that Goldstein would benefit the most by receiving commission on all the assets within his control if his request was honored. Judgment was reserved on the amount of attorney's fees pending a formal application.

On June 29, 2016, the judge, on the verge of retirement, rendered her oral decision approving the attorney's fees request for each party to a maximum allowance of $50,000 (200 hours at an hourly rate of $250), with payment to be made from the Family Trust. Because the judge retired before she was able to memorialize her decision in an order, a second judge did so on August 16. The second judge also had the task of deciding the ensuing motions seeking reconsideration of the order.

In two separate orders dated December 16, 2016, the second judge lifted the cap on attorney's fees and costs imposed by the first judge and determined the parties were entitled to the following reasonable attorney's fees and costs: Monica and Fredric's counsel was awarded $146,820.50 in fees plus $531.93 in costs, and Goldstein's counsel was awarded $153,750.79 in fees plus $1,721.91

in costs. All fees and costs were to be paid from the Family Trust. Another order of the same date denied Goldstein's reconsideration motion to remove Monica and Frederic as co-trustees of the Exempt Trust.[4]

Next, the parties battled over the final accounting submitted by Monica and Frederic. On March 10, 2017, over Goldstein's objections, the second judge rendered an oral decision approving the proposed accounting of the Family Trust. The order was entered on March 15, which also allowed for corpus and income commissions to Monica and Frederic as well as audit fees, attorney's fees and costs to counsel administering the Family Trust, and the parties' attorney's fees and costs related to the final accounting application.

II

In A-2266-16, Monica and Samuel appeal the December 16, 2016 order on reconsideration motion awarding $155,472.70 for attorney's fees and costs to Goldstein. They contend the second judge was required to follow the law of the case as determined by the first judge in the August 16, 2016 order, which limited attorney's fees to $50,000. They stress the first judge decided that both parties

---

[4] An amended order dated February 1, 2017, corrected the December 16, 2016 order, which mistakenly provided that Monica and Fredric were removed as co-trustees of the Exempt Trust.

were partially successful, and the limitation was necessary to preserve the assets of the Family Trust. We disagree.

The question of attorney's fees and costs was presented to the second judge by way of reconsideration motion under Rule 4:49-2. It is well settled that:

> Reconsideration itself is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.] It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citation omitted).]

Based upon our review of the record, there is no reason to conclude the second judge abused his discretion in reconsidering the August 16, 2016 order. Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). The judge properly applied Rule 4:49-2 by reviewing the transcript of the first judge's decision in order to determine whether both parties should be limited in their award of attorney's fees and costs, as she had ordered. He cited her comments:

> Now, this [c]ourt is not making a determination with regard to the reasonableness or the necessity of

those fees. It is simply concerned with protecting the best interest of the [Family Trust], and assets for the care, safety and well[-]being of Bonnie Helsel.

Both parties may seek payment of the remainder of the balance of their fees from their respective clients . . . . Both parties were successful to a degree in this matter.

Yet, in making his decision, the second judge recognized the first judge envisioned that a reconsideration motion could be filed when he referenced her comment, "if the parties are aggrieved and would like a more specific review of the hourly rate and the hours that were spent, the parties are certainly free to address this issue to this [c]ourt's successor, . . . or to file an appeal."

In contrast to the first judge's reasoning to limit attorney's fees and costs to allow for more assets from the Family Trust to be available for Bonnie's benefit, the second judge applied Rendine v. Pantzer, 141 N.J. 292, 334-37 (1995), by reviewing the attorney's affidavits of services, determining a reasonable hourly rate, and calculating a reasonable number of hours worked. He remarked:

This [c]ourt has reviewed the fee application, and the [c]ourt is of the opinion that the hourly rate sought by the attorneys is reasonable, that the amount of the time spent is reasonable, and that the full amount of the legal fee application should be allowed.

. . . .

The [c]ourt can understand, obviously, what [the first judge] was trying to do by way of preserving the amount . . . available to Bonnie Helsel for her well[-]being, . . . but the [c]ourt disagrees that the attorneys should be awarded less than the reasonable fee, given the loadstar approach, in order to benefit the beneficiary of the trust. That benefit should not come at the expense of the attorneys, whose fees are in all respects reasonable.

Lastly, we conclude there is no merit to the Helsels' argument that the second judge was bound by the first judge's ruling based upon the law of the case doctrine. The law of the case doctrine "is a non-binding rule intended to 'prevent relitigation of a previously resolved issue.'" Lombardi v. Masso, 207 N.J. 517, 538 (2011) (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008)). The doctrine professes that "a legal decision made in a particular matter 'should be respected by all other lower or equal courts during the pendency of that case.'" Ibid. (quoting Lanzet v. Greenberg, 126 N.J. 168, 192 (1991)). The law of the case doctrine, however, is discretionary. Id. at 538-39 (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998)).

As noted, the second judge replaced the first judge due to her retirement; as such, it was appropriate for him to determine on reconsideration whether the August 16 order was "based upon a palpably incorrect or irrational basis." Rule 4:49-2. Thus, the law of the case doctrine did not restrict to the second judge's decision-making.

10

III

In A-2266-16, Goldstein raises five arguments which we will address in turn.

Removal of Monica and Fredric as Co-Trustees of the Exempt Trust

Goldstein first argues that both judges erred in not removing Monica and Fredric as co-trustees of the Exempt Trust given that they were removed from the same positions with the Family Trust. He contends that since it was determined that Monica made an improper distribution from the Exempt Trust for personal expenses of burial plots, she and Fredric should have also been removed from the Exempt Trust. We are unpersuaded.

A fiduciary is removed from their position where the person "[e]mbezzles, wastes, or misapplies any part of the estate for which the fiduciary is responsible, or abuses the trust and confidence reposed in the fiduciary." N.J.S.A. 3B:14-21(c). Thus, courts are reluctant to remove a fiduciary appointed by a grantor absent specific proof of fraud, gross carelessness or indifference. See Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165, 196-97 (Ch. 1946). Not only should the court be reluctant to remove a fiduciary, but "so long as . . . [a] trustee acts in good faith, with ordinary discretion and within the scope of his powers, his acts cannot be successfully assailed." Connelly v. Weisfeld, 142 N.J. Eq. 406, 411 (1948). Disagreement

between a beneficiary and a fiduciary is not cause for removal. In re Koretzky, 8 N.J. 506, 531 (1951). "[T]here must be a demonstration that the relationship will interfere materially with the administration of the trust or is likely to do so." Wolosoff v. Csi Liquidating Tr., 205 N.J. Super. 349, 360-61 (App. Div. 1985). Indeed, to remove a trustee there must be facts to warrant such action. See Matter of Konigsberg, 125 N.J. Eq. 216, 219 (N.J. Prerog. Ct. 1939).

Based upon the record, we are unconvinced that the first judge abused her discretion in limiting Monica and Fredric's removal to the Family Trust. As noted, she found poor judgment was exercised but that their conduct was not "intentional or malicious." She also reasoned that, unlike the Family Trust, the Exempt Trust does not provide for Bonnie's "care, health, safety and well-being during her lifetime" and "she is . . . a residuary beneficiary of the [Exempt Trust] and not entitled to those trust assets during her lifetime." Further, she found no merit to Goldstein's request that the principle of the two trusts be disbursed to him for Bonnie's benefit. We likewise perceive no abuse of discretion by the second judge's unwillingness to alter those findings. Fusco, 349 N.J. Super. at 462. Hence, Goldstein has shown no facts that warrant removal of Monica and Fredric as co-trustees from the Exempt Trust.

<u>Attorney's Fees Award to Co-Trustees Despite Their Removal</u>

Goldstein argues both judges abused their discretion in awarding attorney's fees and costs to Monica and Frederic considering their removal as co-trustees of the Family Trust. He also argues attorney's fees to the co-trustees should be divided equally between the Family Trust and Exempt Trust. We are unpersuaded.

A court may allow fiduciaries to pay attorney's fees from accounts entrusted to them "for administration." <u>Rule</u> 4:42-9(a)(2). The award of fees is discretionary. <u>See</u> <u>R.</u> 4:42-9(a)(2). "[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 386 (2009) (quoting <u>Packard-Bamberger & Co. v. Collier</u>, 167 N.J. 427, 443-44 (2001)); <u>Rendine</u>, 141 N.J. at 315.

There is no basis to conclude that either judge abused their discretion in allowing attorney's fees for the co-trustees in this matter. Based upon her credibility assessments of the co-trustees, Goldstein, and the other witnesses, the first judge determined Monica's conduct was "poor judgment" but that it did not "rise to the level of intentional or malicious conduct." Moreover, she reasoned the co-trustees successfully thwarted Goldstein's efforts to invade the Trusts' principal and remove them as fiduciaries of the Exempt Trust.

Similarly, there is no merit to the alternative argument that the attorney's fees should be divided between the two trusts. First of all, Goldstein does not cite to where this argument was made before either judge, therefore we should not consider it now because it does not "'go to the jurisdiction of the trial court or concern matters of great public interest.'" Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Yet, even had the argument been raised, it is without value.

As the co-trustees point out, this dispute essentially involved the Family Trust, concerning the distribution of its principal to Bonnie, despite Goldstein's requests to remove them as co-trustees of the Exempt Trust and invade its principal. The Family Trust is the vehicle that provides lifetime support of Bonnie's needs, whereas the Exempt Trust was created as a generation-skipping trust, whose income is only distributed to the survivor between Fredric and Bonnie, and upon the survivor's death, the principal balance is paid to Monica and Samuel, per stirpes. There is no indication that either judge abused their discretion in allowing attorney's fees and costs to be taken solely from the Family Trust.

Accordingly, the orders awarding the co-trustees' attorney's fees and costs must stand.

A-2266-16T4

Disgorgement of Monica's Commission

Goldstein contends that Monica should be compelled to disgorge the commission fees she earned as co-trustee to the Trust based upon the violation of her fiduciary duties. In support, he cites her removal as co-trustee of the Family Trust. Again, we disagree with Goldstein's contention.

There has been no showing that Monica's conduct in handling her fiduciary duties as co-trustee warrants that she not receive her commission fees. There was no finding she engaged in gross misconduct, willful or fraudulent behavior in the administration of her duties. Clark v. Judge, 84 N.J. Super 35, 62 (Ch. Div. 1964). Goldstein fails to show that during her twenty-two years as co-trustee, she did not diligently perform all her required duties or make investment decisions that generated reasonable income[5] for the Trust. His reliance upon the first judge's finding that she exercised poor judgment on paying for her and Fredric's personal expenses does not warrant her loss of commission. In fact, the judge recognized that during her stewardship, Monica did not take her earned commission fees. N.J.S.A. 3B:18-24, and -25. Hence, we are not convinced that either judge abused their discretion in allowing Monica to receive commission fees.

---

[5] Under the co-trustees' administration, the Trust earned income of $736, 207.

<u>Final Accounting</u>

Goldstein contends that the second judge failed to address his objections to the final accounting submitted by the co-trustees. He specifically objected to: (1) combined accounting of assets in the Family Trust and Exempt Trust; (2) money transfers that were not verified; (3) unverified tax payments; (4) omission of assets listed in the Federal Estate Tax Return of Irving Helsel; and (5) tax payments that do not match the estate's tax payments as reflected by The United States Treasury Department records. We agree.

Our ability to resolve an appeal is largely dependent upon the trial court's compliance with its obligation to state its findings of fact and conclusions of law as required by <u>Rule</u> 1:7-4. To comply, the court must articulate factual findings and correlate them with the principles of law. <u>Curtis v. Finneran</u>, 83 N.J. 563, 570 (1980). Actions to settle a probate accounting require a "line-by-line review on the exceptions to an accounting." <u>Higgins v. Thurber</u>, 205 N.J. 227, 229 (2011). When that is not done, this court's review is impeded, and a remand is necessary. <u>Elrom v. Elrom</u>, 439 N.J. Super. 424, 443 (App. Div. 2015).

In explaining his decision explaining the basis for his March 10, 2017 order approving the Final Accounting, the second judge:

> I am prepared and I will here and now approve the final accounting of the Family Trust. . . . I have gone over all of your objections. I have carefully gone through all of the

> explanations that [the co-trustees] have provided in response to the objections. Ms. [Valerie] Carter has gone over the formal details of the accounting and she finds nothing wrong with it. And trust me, if there was something wrong with it, Ms. Carter would have found it[.]

There was no discussion of why Goldstein's objections to the proposed accounting were rejected; merely the conclusory statement that there was nothing "wrong with it." We are therefore constrained to remand so that the judge can explain his reasons for dismissing Goldstein's objections in accord with Rule 1:7-4.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION