FISCHETTO PAPER MILL SUPPLY, INC., PLAINTIFF-APPELLANT, v. QUIGLEY CO., INC., DEFENDANT-RESPONDENT.

Argued October 24, 1949—Decided November 21, 1949.

Mr. *Thomas J. Brogan* argued the cause for appellant (Mr. *Stephen Mongiello*, attorney).

Mr. *Mark Townsend* argued the cause for respondent (*Messrs. Townsend & Doyle*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J.  The appellant sued for the purchase price of certain merchandise delivered, to wit, waste paper.

Delivery was admitted but the respondent disputed the quantity received and the amount due. The issue so framed was decided by the jury and is not before us at this time.

The appeal concerns the issues arising out of a counterclaim filed by the respondent in which it alleges it purchased and paid for shipments of waste paper for a long time, from December, 1940, to July, 1945, and during this period was cheated and defrauded by the appellant because the weights of the shipments so made were overstated, resulting in payments over and above the reasonable value of the merchandise received to the extent of approximately $15,000. The jury returned a verdict of $9,449.62, for which judgment was accordingly entered and is presently under consideration.

The case involves a somewhat complicated state of facts in reference to the proof submitted by the respondent on its counterclaim endeavoring to show it had been defrauded by paying for merchandise never actually received.

The counterclaim alleges there was a scarcity of the commodity at the time and the appellant refused to sell and deliver any waste paper unless the weighing thereof was waived and the appellant's representation as to the true weight accepted and payment made at the prevailing market price. It further alleges that between December, 1940, and July, 1945, various quantities of waste paper were delivered to the Old Bridge plant which were represented by the appellant to weigh 4,774,724 pounds and the respondent, relying upon said representation, paid therefor, including the cost of truckage, the sum of $38,555.07. It then charges that in truth only 2,589,791 pounds of waste paper were actually delivered and the appellant had thus cheated and defrauded the respondent to the extent of $15,365.25.

Fischetto Paper Mill Supply, Inc., is a closely held family corporation and has been supplying waste paper to the respondent for many years. Quigley Company has factories in South River and Old Bridge, New Jersey. It manufactures, amongst other products, high temperature insulated fire brick, of which burnt waste paper is a component part. The paper is chopped up and added to other ingredients in precise pro-

portions ascertained by weighing, after which the whole mixture is put in kilns where the paper and other inflammable materials are burned out, leaving a porous and insulated brick.

The war caused a scarcity of paper supply and the appellant suggested the weighing be discontinued and in lieu thereof it would furnish weighmaster's certificates to certify the net weight of the deliveries.

Sometime in 1943 the respondent discovered at the Old Bridge plant a shortage in the book inventory of materials in relation to all of the products used in production. They were operating at full capacity but their auditors were unsuccessful in ascertaining the cause of the shortage. As a result of an anonymous telephone call in May, 1945, the respondent's plant manager became suspicious of the correctness of the certificates showing the quantity of paper delivered. The next load was therefore weighed and was found to total only 28,195 pounds instead of 41,955 pounds, the amount stated in the receipt. On the following delivery the total load was found to weigh only 19,516 pounds instead of the 29,635 pounds represented.

A complete investigation and audit were made by the respondent. Adding together the quantity of paper on hand on December 31, 1942, as determined by an inventory made on that day, the amount allegedly delivered by appellant from January 1, 1943, to July 9, 1945, and the small amounts of paper obtained through other sources and subtracting the quantity then on hand plus the amount determined from its records to have been used in manufacturing operations, a shortage of 755 tons was shown over the entire period.

It is contended (1) there was error by the trial court in not directing a verdict against the respondent and in holding it had made out a case of fraud; (2) it was error to permit the action of fraud to go against the corporation alone; and (3) error in the charge of the court to the jury.

The rule as to fraud is clear and has been consistently followed in our courts.

"In *Byard v. Holmes*, 34 *N. J. L.* 296, the rule was laid down that to maintain an action on the case for deceit, the plaintiff must

allege with reasonable certainty, and be prepared to prove—1. That the defendant made some representation to the plaintiff, meaning that he should act upon it. 2. That such representation was false, and that the defendant, when he made it, knew it to be false; and 3, that the plaintiff, believing such representation to be true, acted upon it, and was thereby injured." *Kosobucki v. McGarry*, 104 *N. J. L.* 65 (*E. & A.* 1927).

The appellant now argues, as nearly as we can ascertain from its brief, that one of the important elements in a charge of fraud is the intent with which the representation was made, and it is urged "throughout the transcript nowhere is there any proof of intent on the part of the plaintiff." Likewise, it is asserted "there was no reliance on any representation and without it, no fraud" and "there just is no representation by the plaintiff to the defendant that can be found anywhere in this record."

These contentions are hardly tenable in view of the record. Although it was partly conflicting, there nevertheless was ample testimony to indicate there had been a system of weighing and checking each load of paper which was discontinued upon the insistment of the appellant, the respondent being induced to agree to the suggestion because of the scarcity of the supply occasioned by war demands, plus the fact that it was to receive a weight certificate specifying the amount of merchandise delivered. Certainly, by inference at least, it was intended the purchaser should rely upon the certificates. Otherwise they would have no purpose or utility. In fact, the company's treasurer testified he had "been taking the word of the Fischetto Company for the amount of paper that they had delivered."

Although the respondent was aware of a marked shortage in material, it was unsuccessful in solving the problem until the receipt of the anonymous phone call, which caused the actual checking and weighing of the next two deliveries. This shed considerable light on what formerly had been a mystery.

The testimony to the effect that some of the weighmaster's certificates were not authentic but were prepared by the appellant and the figures put on after the seal had been affixed was most significant. It is difficult to conceive this as an honest

transaction with such spurious documents as its foundation. They surely were not calculated to give a financial advantage to the respondent. The intent to defraud, we think, was amply proved and there was direct testimony as to the reliance upon the representations made.

In so far as "representation" is concerned, the appellant apparently takes the position that there must be an actual oral or written statement embodying the inducement in order to form the basis of a charge of fraud. Here the representations relied upon by the respondent were the statements contained in the weighmaster's certificates and the receipts prepared and issued by the appellant. The presentation of these to the respondent at the time of the delivery of the paper constituted the representations, which, if false, are a sufficient basis for an action in fraud and deceit. Whether or not they were false under these circumstances was a question of fact to be determined by a jury.

On a motion for a direction of verdict, evidence will not be weighed but "all the proofs which support the claim of the party against whom the motions are made must be accepted as true and he is entitled to the benefit of all legitimate inferences which may be drawn therefrom. Where fair minded men might honestly differ as to the conclusions to be drawn from the proofs, the questions at issue should be submitted to the jury." *Scarano v. Lindale,* 121 *N. J. L.* 549 (*E. & A.* 1939); *Schwartz v. Rothman,* 1 *N. J.* 206 (1948). There was no error in failing to direct a verdict.

Nor was there error in submitting the proof on the counterclaim to the jury for its determination. The appellant declares the proof recorded to be "untrustworthy as a basis for a jury's consideration," relying on *Lehigh Valley R. R. Co. v. Jersey City,* 103 *N. J. L.* 574 (*Sup. Ct.* 1927); affirmed, 104 *N. J. L.* 437 (*E. & A.* 1928). There the plaintiff, after one of its meters was found to be out of order and to measure improperly the flow of water, attempted to project the shortage back over a great many years without proving the meter had been in the defective condition throughout that period. There is little parallel, for in the instant case the respondent

produced evidence to show the quantity of paper bought over the period in question and, by excluding the small quantities bought from other sources, narrowed the result to the paper purchased from the appellant. It then proved by competent witnesses the amount of paper used in manufacturing the brick, the non-existence of wastage and the fact there were no losses by fire or other casualties. To be sure, there was conflicting evidence as to fires and other matters, but these questions were all for the jury to decide and were properly submitted.

It is next contended there was error in permitting the action against the corporation alone, citing *Kennedy v. McKay,* 43 *N. J. L.* 288 (*Sup. Ct.* 1881). Assuming but not conceding merit in the argument so advanced, it would still not be a proper basis for a reversal. It was not relied upon nor suggested in the court below and therefore cannot be raised and passed upon here for the first time. The parties are bound by the record and by the reasons and grounds upon which they relied and advanced in the court below. *Schwarlz v. Rothman, supra; Woodward v. Harden,* 102 *N. J. L.* 31 (*Sup. Ct.* 1925).

The court, amongst other things, charged the jury:

"To make out a case of fraud, it is necessary for a party to prove by the greater weight of the evidence that the Fischetto Company made some representation to the Quigley Company meaning that it should act upon it, and second, that such representation was false and that the Fischetto Company when it made the representation knew it to be false; third, that the Quigley Company believing such representation to be true acted upon it and was thereby injured or damaged."

Although the appellant claims these directions to the jury to be erroneous, it admits in its brief that the charge so made was accurate but says "regardless of the accuracy of the general rule stated by the court, that in the circumstances it was erroneous and made for harmful error." The argument advanced is so inconsistent it is difficult to follow but the gist of it seems to be "there was no evidence of any misrepresentation" and "as we see it, the court's charge was

entirely inappropriate in the light of the testimony of all the witnesses. No one contended that any representation was made. If that be so, there was no case of fraud." These matters have already been passed upon and disposed of under previous points and have no bearing on the correctness of the legal principle challenged. The court's charge was in accord with the authorities and there was no error as alleged.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.