15 N.J. Super. 524 (1951)
83 A.2d 732
SAM LANDAU AND DAVID COHN, PLAINTIFFS,
v.
IRVING ROSENBAUM, MITCHELL ROSENBAUM, MORRIS ROSENBAUM AND RO-GLO & CO., INC., A BODY CORPORATE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 5, 1951.
*526 Mr. David Cohn (Mr. Samuel A. Wiener, of counsel), attorney for plaintiffs.
Messrs. Cole, Morrill & Nadell, attorneys for defendants.
GRIMSHAW, J.S.C.
The events leading up to the present controversy are as follows:
In the early summer of 1948, the defendant Irving Rosenbaum, then president of Fairtex Glass Manufacturing Company, a New Jersey corporation, employed the plaintiff Landau to make an appraisal of the assets of the Fairtex Company. During the course of the appraisal, Rosenbaum mentioned to Landau that Fairtex needed additional working capital of $20,000 or $25,000 and asked Landau if he could arrange such a loan. At that time Fairtex was indebted to Mill Factors Corporation in the sum of $23,000 which was the balance due on two notes, one for $19,000 dated December 17, 1947, and one for $15,000 dated January 9, 1947. These notes were secured by chattel mortgages bearing even date with the notes.
*527 Landau submitted the Rosenbaum request to David Cohn, the other plaintiff. After some negotiations, Cohn, who was the dominant figure in the transaction, agreed to lend Fairtex the sum of $22,000. At the same time he arranged to take over the Mill Factors mortgages. Landau also participated in the transaction.
The parties met on October 15, 1948, at the office of Cohn, to consummate the deal. Cohn had obtained an assignment of the Mill Factors mortgages for which he paid $23,000. Another chattel mortgage in the sum of $22,000 was executed by Fairtex Glass Company in favor of Cohn. The mortgage was payable in monthly installments of $1,000 with interest at six per cent. Fairtex also executed to the order of Cohn and Landau a promissory note in the amount of $45,000, dated October 15, 1948, and payable one month after date at the United States Trust Company of Paterson. This note was endorsed by Irving Rosenbaum, Mitchell Rosenbaum and Morris Rosenbaum. Additionally, all the stock of Fairtex Glass Manufacturing Company was assigned to Cohn as trustee. And finally, as a bonus for obtaining the loan, Fairtex obligated itself to pay to Cohn and Landau each the sum of $50 a week for 45 months, or a total of $19,500. These payments were to continue regardless of the fact that the mortgage might or might not have been satisfied before the expiration of the 45 months.
Simultaneously with the execution of the various documents detailed above, Mr. Cohn addressed a letter to the Fairtex Company, as follows:
 "October 15, 1948
 Fairtex Glass Mfg. Co., Inc.
 94 Fulton Street
 Paterson, New Jersey

Att: Mr. Irving Rosenbaum
Dear Mr. Rosenbaum:
In accordance with the understanding arrived at at our office with you and the officers of the company and your attorney, David Kimmel, on behalf of myself and Sam Landau of Paterson, this letter will serve as an agreement on our part that the total obligation that you *528 owe covering the two mortgages held by us and taken by assignment from Mill Factors of New York, amount to $23,000.00 and that so long as you continue to reduce the subsequent mortgage executed by you as of this date in the face amount of $22,000.00 payable $1,000.00 each month from the date hereof with interest at 6%, you will not be called upon to satisfy or reduce the Mill Factors mortgage by reduction of payments on the principal amount thereof as provided therein, and your only obligation will be to pay lawful interest on the balances remaining due thereon, namely, $23,000.00 as of this date.
In addition thereto, I agree as Trustee, to hold in my possession all the outstanding shares of stock issued to you and your two brothers, Mitchell Rosenbaum and Morris Rosenbaum which aggregate thirty shares in all, as collateral security for the total indebtedness of $45,000.00 together with lawful interest subject however to the additional obligation that the company has to continue to pay Mr. Landau and myself each per week the sum of $50.00 for a period of forty-five months commencing from the date hereof and that upon the fulfillment of these payments aforementioned, we agree to do the following:
1. Reassign and redeliver the thirty (30) shares of stock endorsed in blank.
2. We will deliver and satisfy necessary satisfactions cancelling and satisfying the three chattel mortgages herein to your company so that the same may be legally and effectively discharged or cancelled of record, and we will return a promissory note made by the company and endorsed by the officers individually in the fact amount of $5,000.00 as of this date.
We agree that on and after the payment of ten installment payments of $1,000.00 each on the principal indebtedness aggregating $45,000.00 together with lawful interest, to grant to your company, if you require, a grace period of thirty (30) days on and after the due date when the installment payment shall become due for the purpose of meeting payments of $1,000.00 per month on account of the principal as hereinbefore mentioned. However, this does not effect the continuing liability of the company to pay under its separate agreement and as provided for in the minutes of the company, the payment of $50.00 per week each to Mr. Landau and myself, covering the services we are rendering and will continue to render for a period of forty-five months from the date hereof.
As requested by you, I desire to clarify the situation respecting the shares of stock. Upon the satisfaction of the loans, and upon compliance with your obligation, as provided for herein as contained in the minutes and other documents executed by you, we agree to return all the shares of stock including the one share presently held by Sam Landau transferred by Irving Rosenbaum to him to enable him to qualify as director and officer.
We further agree that so long as the mortgages are not in default and the company continues to meet its obligation of $100.00 per *529 week to Messrs. David Cohn and Sam Landau, that we will not assign or transfer or negotiate these liens to anyone.
 Very truly yours,
 /S/ David Cohn
DC ac
The undersigned, Sam Landau, mentioned in the foregoing letter, does hereby agree to the terms and conditions set forth therein.
 /S/ Sam Landau
 Dated: October 15, 1948."
This letter bore the assent of Mr. Landau, but did not have on it any indication of approval by the Rosenbaums.
The Fairtex Company made monthly payments of $1,000 on account of its obligation up to and including June 15, 1949. On July 8, 1949, Irving Rosenbaum told Landau that Fairtex was going out of business. He turned over the keys of the business to Landau, who proceeded to take possession. On July 15 the Cohn chattel mortgage was foreclosed and the assets were purchased by Cohn for $5,000. They were later sold for approximately $16,500.
Also on July 15, 1949, Mr. Cohn went to the United States Trust Company with the $45,000 note. Upon learning that Fairtex had no account in that institution he left without making any formal presentment of the note for payment. Later the same day he caused notice of the nonpayment of the note to be mailed to the endorsers.
On July 15, an involuntary petition in bankruptcy was filed against Fairtex Glass Manufacturing Company. Some time subsequent to that date the Rosenbaums as officers of the bankrupt corporation consented to an adjudication.
The complaint in this cause is in five counts. In the first count the plaintiffs seek to charge the defendants Irving Rosenbaum and Morris Rosenbaum with liability as endorsers on the $45,000 note. Mitchell Rosenbaum was not served with process. Payments on account of the principal of the note in the amount of $8,000 were conceded and judgment in the amount of $37,000 was sought.
It is admitted that the note was not presented for payment on the date on which it became due according to its terms. *530 Nor was notice of dishonor given to the endorsers at that time. Plaintiffs assert, however, that under the terms of the letter from Mr. Cohn, dated October 15, 1948, the note did not become in default until July 15, 1949, the date upon which the Fairtex Company failed to make the July payment of $1,000. They also charge that on or before July 15, 1949, the defendants, as officers of the corporation, participated in the bankruptcy proceeding and, therefore, waived notice of dishonor.
The latter assertion is false in fact and plaintiffs knew it to be false. The involuntary petition in bankruptcy was not filed until July 15, 1949, and it was after that date when defendants consented to the adjudication of bankruptcy.
The offer in evidence of the Cohn letter was an attempt by extrinsic evidence to change the contract of endorsement. This cannot be done. Beers v. Broad and Market National Bank of Newark, 102 N.J.L. 5 (Sup. Ct. 1925). The proof stands uncontradicted that the $45,000 note was neither presented for payment on its due date nor was notice of dishonor given to the endorsers. Therefore, defendants' motion for judgment upon the first count was granted. R.S. 7:2-89.
The second count charges that as a result of false representations made by the Rosenbaums the plaintiffs were induced to advance to the Fairtex Glass Manufacturing Company the sum of $45,000 of which amount the plaintiffs ultimately lost $30,000.
It is alleged that the defendants falsely represented that all of the chattels listed in the schedule attached to the Cohn chattel mortgage of October 15, 1948, were the property of Fairtex Glass Manufacturing Company. Conceding that the representations were made, the plaintiffs have failed to prove that they were false. Landau admitted that all the scheduled chattels were at the plant of the Fairtex Company when the mortgage was executed. And there is no proof that they were not the property of the Fairtex Company.
*531 There is a further charge that Irving Rosenbaum falsely represented to Cohn that a Permutit water softening unit was paid for when in fact it was subject to a conditional sales agreement. As to this charge the proof failed to establish that the Permutit water softening unit was included in the list of chattels covered by the Cohn mortgage. The Permutit water softener was not mentioned by name. And neither Cohn nor Landau was able to say that the unit was included among the chattels mortgaged. Two water softeners were mentioned in the chattel mortgage. And it was developed on cross-examination that there were two water softeners attached to a silvering machine which was mentioned in the mortgage. In the absence of competent proof that the Permutit water softener was included in the list of chattels covered by the chattel mortgage, any representations concerning it could not serve as a basis for a charge of fraud.
Finally, it is charged that false representations of ownership were made concerning items not included in the schedule of assets covered by the mortgage. Cohn drew the chattel mortgage. At the time he had the benefit of the appraisal made by Landau. He also had free access to the Fairtex shop and to its books. He chose not to include certain items of merchandise in the chattel mortgage. Under the circumstances, therefore, it is impossible for me to understand how any allegations or representations concerning the discarded items could work harm to the plaintiffs.
In the third count the plaintiffs charge that the corporation defendant Ro-Glo & Co., Inc., was formed by the defendants Rosenbaum for the purpose of defrauding their creditors. It is further alleged that the assets of Ro-Glo are, in fact, the assets of Rosenbaum. And the court is asked to determine the interest of the defendants Rosenbaum in the Ro-Glo Corporation and order a sale of such interest for the benefit of the plaintiffs.
The record fails to support the allegations of the third count. Plaintiffs' own witnesses testified that Komer Van Ostenbridge, a person not a party to the litigation, *532 furnished the capital with which the corporation was started; that he was the owner of the controlling stock interest and that Irving Rosenbaum was only the manager. In the face of such testimony the third count must fall. Fraud must be proved by clear and convincing proof. Suspicion and conjecture are not enough. Rice v. Barrington, 75 N.J.L. 806 (E. & A. 1907); Wolosin v. Iavarone, 112 N.J. Eq. 409 (E. & A. 1932).
The fourth count contains allegations that the defendant Evelyn Rosenbaum, wife of Irving Rosenbaum, holds a contract under the terms of which she is entitled to purchase 50 per cent of the stock of Ro-Glo Co., Inc. It is charged that this contract is, in fact, the contract of Irving Rosenbaum. And a judgment is sought declaring that any benefits which may arise under this contract shall accrue to the benefit of the creditors of Irving Rosenbaum. It is unnecessary to pass upon the adequacy of this count. Suffice it to say again that the record completely fails to support any of the allegations of the count.
In the fifth count, plaintiffs seek to charge the Rosenbaums with liability upon the notes given to Mill Factors Corporation and by that company turned over to Mr. Cohn when he took an assignment of the chattel mortgages given to secure those notes. At the time of the assignment to Cohn on October 15, 1948, there was due on the two notes the sum of $23,000. They were endorsed by the Rosenbaums who waived notice of dishonor.
On October 15, 1948, Mr. Cohn advanced to Fairtex the sum of $22,000 and took a chattel mortgage from Fairtex in that amount. At the same time he took an assignment of the Mill Factors mortgages for which he paid $23,000. Then Cohn and Landau received from Fairtex a note for $45,000. Whether or not the Mill Factors notes were considered as paid when the new note was given depends upon the intention of the parties. Pignone v. Brooks, 120 N.J.L. 258 (Sup. Ct. 1938). In the letter of October 15, 1948, Cohn speaks of the various mortgages and the $45,000 note but fails to mention *533 the Mill Factors notes. In the light of this letter it might very well be argued that Cohn and Landau accepted the $45,000 note in satisfaction of the preexisting indebtedness. But, as I view the situation, it is unnecessary to reach a conclusion on that point. The judgment must rest on a more fundamental ground.
During the course of the litigation various motions were made. In connection with these motions both plaintiffs executed affidavits. Those affidavits are replete with false statements known to be untrue by the affiants when the affidavits were executed. When taxed with the misstatements at the hearing the plaintiffs calmly referred to them as oversights. Some, plaintiffs said, represented their interpretation of the facts.
There can be only one reason for such conduct. It must have been occasioned by plaintiffs' desire to perpetrate a fraud upon the court. And it presents such a flagrant example of unclean hands that no court of equity could permit it to go unchallenged. Gluck v. Rynda Development Co., 99 N.J. Eq. 788 (Ch. 1926), affirmed 100 N.J. Eq. 554 (E. & A. 1926).
The complaint will be dismissed.