RAY POST, TRADING AS RAY POST AGENCY, PLAINTIFF-RESPONDENT, v. GERSON BACHER, TORRID K-9, INC., A CORPORATION OF NEW JERSEY, AND B & M HOLDING CO., A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 20, 1958—Decided January 31, 1958.

Before Judges Clapp, Jayne and Schettino.

*Mr. Warren Brody* argued the cause for plaintiff-respondent (*Mr. Jacob Winograd,* attorney; *Mr. Isadore Glauberman,* of counsel).

*Mr. James A. McTague* argued the cause for defendants-appellants.

The opinion of the court was delivered by

Clapp, S. J. A. D.    This action was brought in the Superior Court, Chancery Division, to recover real estate brokerage commissions.

On January 14, 1955 plaintiff, a real estate broker, entered into a contract with the defendant Gerson Bacher, the president and principal stockholder of the two corporate defendants, Torrid K-9, Inc. and B & M Holding Co., which were the owners of certain property. By this contract Bacher gave plaintiff during the ensuing three months the exclusive right to procure a purchaser for the property, agreeing (as we read the contract) that if the same were sold either through plaintiff *or by Bacher,* plaintiff was to receive a commission of 10% of the sales price.

The case was tried before Judge Conford. He found that during the three-month period Bacher entered into a tentative agreement with Thomas A. Sessa and Frank G. Montalto to sell them the property, and that then, in order to avoid paying commissions, he fraudulently induced plaintiff, in consideration of the sum of $500, to rescind the brokerage contract. Thereafter, and still within the stated period, namely, on April 5, 1955, Sessa and Montalto acquired the property from the defendant corporations, paying $160,000

for it. Judge Conford reinstated the brokerage contract, which he had found to have been fraudulently rescinded, and awarded plaintiff damages thereon in the sum of $15,500, 10% of $160,000, less the $500.

Defendants appeal, contending first that the proof of fraud was inadequate. They claim that to establish fraud the proof must be clear and convincing. Many cases may be cited for such a proposition. See for example *Fivey v. Pennsylvania R. Co.*, 67 *N. J. L.* 627, 634 (*E. & A.* 1902) ("clearly and distinctly proved"); *Summerill v. Summerill*, 83 *N. J. Eq.* 3, 5 (*Ch.* 1913) (an inference of fraud must be clearly established), affirmed 83 *N. J. Eq.* at *page* 350 (*E. & A.* 1914); *Pahy v. Pahy*, 107 *N. J. Eq.* 538, 540 (*E. & A.* 1931) ("clearly and convincingly proved"); *Ebert v. Givas*, 109 *N. J. Eq.* 495, 498 (*E. & A.* 1932) ("clearly proved"); *Security Acceptance Corp. v. Donegani*, 113 *N. J. Eq.* 281, 284 (*E. & A.* 1933) ("clearly proved"); *Fortunel v. Martin*, 114 *N. J. Eq.* 235, 241 (*E. & A.* 1933) ("strictly proved by clear, concise, and unequivocal evidence"); *Connelly v. Weisfeld*, 142 *N. J. Eq.* 406, 410 (*E. & A.* 1948) ("clearly and convincingly proved"); 9 *Wigmore, Evidence* (*3d ed.*), § 2498 p. 329; *McCormick, Evidence*, 680 (1954); 3 *Black, Rescission and Cancellation* (*2d ed.*), § 683. But see *Fischetto Paper Mill Supply v. Quigley Co.*, 3 *N. J.* 149, 155, 156 (1949) ("greater weight of the evidence"); *Newark Live Poultry Co. v. Fauer*, 118 *N. J. L.* 556, 560 (*Sup. Ct.* 1937) (no "stricter rule than in the ordinary civil case"), affirmed on other grounds 120 *N. J. L.* 187 (*E. & A.* 1938); *Kane v. Hibernia Insurance Co.*, 39 *N. J. L.* 697, 704 (*E. & A.* 1877) (to like effect).

The standard "clear and convincing proof," or some variant of it, seems to have had its origin in the practice of the English Court of Chancery in connection with suits for the reformation or rescission of a written instrument because of mistake or fraud. A sterner standard may indeed be justified when dealing with written instruments. Nevertheless, that same standard is now applied to other situations of fraud, being imposed there, apparently not because of

the offensive character of the charge (*Kane v. Hibernia Insurance Co., supra; Blackmore v. Ellis,* 70 *N. J. L.* 264, 266 (*E. & A.* 1904)), but perhaps because of an assumed unlikelihood of fraudulent conduct. One may question, with McCormick, the soundness of a rule which places so heavy a burden upon one who claims to be the victim of fraud. *McCormick, supra,* 680, *n.* 11.

But we need not resolve that matter here. In this case we will assume that plaintiff's proof must be *clear and convincing.* What, however, does this very common term mean? It has been said that "the line of demarcation between what is 'clear, satisfactory and convincing' and that which removes 'all reasonable doubt' is more fanciful than real." *In re Calef's Will,* 109 *N. J. Eq.* 181, 185 (*Prerog.* 1931), affirmed 111 *N. J. Eq.* 355 (*E. & A.* 1932). This, indeed may be the import of the word "clear," if we bear down upon it, and perhaps also of the word "convincing." *State v. Leo,* 80 *N. J. L.* 21, 25 (*Sup. Ct.* 1910). However, certain writers on the law of evidence indicate that the term "clear and convincing" is not to be taken literally, but rather as the enunciation of a standard of proof, falling between the standards usually obtaining with respect to criminal and civil issues. *Cf.* 9 *Wigmore, supra,* 329; *Uniform Rules of Evidence, Rule* 1 (4). Applying such a standard to a matter of fraud (we have assumed, above, that the standard is applicable to such a matter generally), the trier of the fact is bound to conclude that fraud has not been made out unless the proofs demonstrate a high probability (*McCormick, supra,* 679), or a strong probability, or that it is *much* more probable than not, that there was fraud. 1 *Morgan, Basic Problems of Evidence* 23, 24 (1954); *Morgan, "Instructing the Jury Upon Presumptions and Burden of Proof,"* 47 *Harv. L. Rev.* 59, 65–67 (1933); 5 *N. J. Practice* 116 (1950).

██ However, in the instant matter—whatever may be the true interpretation of the standard "clear and convincing proof"—we may assume that it calls for proof beyond a reasonable doubt. For here, the evidence is of such a nature

that we may say, without stopping to discuss it, that even under such a standard, the finding of fraud should not be disturbed.

The second point raised by defendants on the appeal goes to the question of damages. Defendants point out that Bacher, not the plaintiff, procured the buyers here, and they make the contention that plaintiff is not entitled to commissions since there is no evidence that during the stated period he could or would have produced a buyer ready, willing and able to sell. But this overlooks the provision of the brokerage contract rendering Bacher liable for commissions in the event he himself sold the property during that period. In the face of that provision Bacher's liability for commissions cannot be denied. *Dresser v. Gilbert,* 81 *N. J. L.* 358 (*Sup. Ct.* 1911) ; *Stevenson Co. v. Oppenheimer,* 91 *N. J. L.* 479 (*Sup. Ct.* 1918) ; *Lambert v. Cahill,* 2 *N. J. Misc.* 826 (*Sup. Ct.* 1924) ; *Jones v. Hollander,* 3 *N. J. Misc.* 973, 974 (*Sup. Ct.* 1925) ; *cf. Kruse v. Ferber,* 91 *N. J. L.* 470, 472 (*Sup. Ct.* 1918) ; *Ettinger v. Loux,* 96 *N. J. L.* 522, 525 (*E. & A.* 1921) ; *Klie v. Hollstein,* 98 *N. J. L.* 473, 476 (*E. & A.* 1923) ; *Martin Realty Co. v. Fletcher,* 103 *N. J. L.* 294, 295 (*Sup. Ct.* 1927) ; *Maxwell v. Staulcup,* 103 *N. J. L.* 509, 511 (*Sup. Ct.* 1927) ; *Rose v. Minis,* 41 *N. J. Super.* 538, 544 (*App. Div.* 1956). For a case quite similar on its facts, see *Walter v. Libby,* 72 *Cal. App. 2d* 138, 164 *P. 2d* 21 (*Sup. Ct.* 1945). As Judge Conford said in his opinion,

"\* \* \* defendants, as perpetrators of a fraud will not be heard \* \* \* to say that they would not have made the sale, which, in fact, they made, if their fraudulent scheme had not been successfully consummated."

Judge Conford properly awarded plaintiff damages in the sum of $15,500.

Affirmed.