71 N.J. Super. 213 (1961)
176 A.2d 532
CHARLES ARMEL AND HERBERT ARMEL, T/A ARMEL FRENCH ICE CREAM CO., PLAINTIFFS-RESPONDENTS,
v.
EDWARD CREWICK, ALSO KNOWN AS EDWARD CRESWICK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1961.
Decided December 18, 1961.
*214 Before Judges GOLDMANN, FOLEY and KILKENNY.
Mr. William E. Logan argued the cause for appellant.
Mr. Robert Diamond argued the cause for respondents.
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a judgment for plaintiffs entered in the County Court following a nonjury trial.
Plaintiffs' action to recover monies due them for the sale of ice cream products to Crest Enterprise, Inc., was based upon fraud and misrepresentation by defendant, as to the solvency of Crest.
Many of the facts proved at the trial were not seriously in dispute. Plaintiffs were in the business of the sale of ice cream. Defendant, as president and principal stockholder, operated a vending machine company, Crest Enterprise, Inc. At the end of May 1959, or shortly thereafter, the parties entered an oral arrangement whereby plaintiffs undertook to deliver their products to Crest on order at an agreed price. Deliveries were made on June 6, June 11 and June 25, 1959. Between the second and third deliveries Crest gave plaintiffs a check postdated June 26, 1959 covering the invoice of the June 6 delivery. When presented for payment, it was returned because of insufficient funds in the Crest account. Insolvency proceedings were *215 instituted against Crest in July 1959. Sale of its assets provided no dividend for its general creditors.
James E. Masterson, Esq., called as a witness by plaintiffs, testified that there was filed with him, as receiver in the insolvency proceedings, a large number of creditors' claims for money due and owing by Crest as of the "end of May 1959." Richard F. Allenby, assistant cashier of the Montclair National Bank and Trust Company in which Crest maintained its only bank account, testified that on May 29 funds in the account amounted to $103.83 and that the account had been overdrawn many times during May 1959.
The basic question for determination at the trial, so described by the court and assented to by defendant's attorney, was whether or not "plaintiffs relied upon any representations of the defendant as to the financial responsibility of the Crest Enterprise." This issue was purely one of fact. According to plaintiff Charles Armel, who was corroborated by his sales manager Lewis Freilich, when he met defendant at the end of May and solicited the Crest business he told defendant that he had taken over a bankrupt company, was "under-capitalized and under-financed," so that the best credit terms he could extend were "bill on bill." This meant, according to plaintiff, that payment of the first order became due on delivery of the second, payment of the second became due on delivery of the third, and so on. In response to this proposal defendant said:
"Son, you don't have nothing to worry about. I'm a Brigadier General from the second world war. I'm a solid citizen. You're going to do business with a substantial outfit. We never defaulted on any of our payments, and you got nothing to worry about. The fact is, if you're worried about my credits, I'll pay you C.O.D.

* * * * * * * *
`We're a solid outfit. We're getting bigger and bigger. We're putting more and more machines on different locations. We're expanding.'  the fact is, he showed me a few of the machines at that time that was in the process of being shipped out to a new location  `and we're getting bigger and bigger by leaps and bounds.'"
*216 Plaintiff went on to say:
"I was afraid to give him such stiff terms. I wanted to build up a little confidence in him, and I didn't want [sic] to think I was that greedy. I said, `Bill on bill is good enough for me.'"
Defendant categorically denied the representations respecting the financial condition of Crest attributed to him by plaintiff. He testified that this subject did not enter the discussion. On the contrary, according to him, arrangements for completion of the transaction were delayed because plaintiff was concerned with the production problem presented by the nature of defendant's operation, i.e., the sale of "ice cream cones, pops and sandwiches," as distinguished from the sale of bulk ice cream, quarts, etc. He testified further that a week or ten days went by after the discussion and he then communicated with plaintiff, asking him whether he wanted to give him a "figure," or what "price structure would he charge." Plaintiff then agreed to take on the account and defendant gave him an order, nothing being mentioned concerning the terms of payment. Defendant's explanation of the postdated check was that it was given at plaintiff's request, that he told plaintiff or Freilich that he was unable to make payment at the time payment for the first order was due, and understood that the check would not be deposited by plaintiff until he telephoned defendant.
At the close of plaintiffs' case defendant moved for a judgment of dismissal upon the ground that the burden rested on plaintiffs to prove the alleged fraud by "clear and convincing" evidence. In denying the motion the court stated:
"I think the evidence here is sufficient to draw a fair inference that there was a representation that the corporation was sound financially and was able to pay its bills." (Emphasis added)
Premising his argument upon the assumption that the court was bound to employ the "clear and convincing" *217 standard in evaluating plaintiffs' proofs, defendant contends that a fair inference is of insufficient probative strength to bear the weight of such standard. Whether or not this be so, the defendant had no absolute right to a final adjudication at this stage of the proceedings, and so the propriety of the court's ultimate disposition of the action must be tested in light of the entire evidence in the case.
More important is the basic fallacy in defendant's assumption that "clear and convincing" proof of fraud was required rather than the norm generally applied to a civil action  "preponderance" of the evidence. This was an action at law  not a suit in equity. Historically, the court of equity has frequently applied the "clear and convincing" quantum to averments of fraud. See Connelly v. Weisfeld, 142 N.J. Eq. 406 (E. & A. 1948), and cases cited therein. However, in Newark Live Poultry Co. v. Fauer, 118 N.J.L. 556 (Sup. Ct. 1937), affirmed o.b., 120 N.J.L. 187 (E. & A. 1938), wherein plaintiff sought, as here, to recover damages at law for false representations of solvency made to obtain credit, the court approved the trial court's charge that the burden was upon the plaintiff to prove its case by a "fair preponderance" of the evidence, and went on to say:
"The argument of the appellant seems to be that the liability of the defendant in this case, because it is based on fraud, must be proved beyond a reasonable doubt, or by a stricter rule than in the ordinary civil case. We do not understand that there is any such requirement in New Jersey but that the ordinary rule in civil actions applies in the case where the alleged civil rights of the plaintiff are based on deceit or fraud of the defendant. There seems to us to be no logical support for a rule in matters of this kind that would enable those guilty of a tort, even though it should be indictable, to make it more difficult for the injured party to establish civil liability." 118 N.J.L., at pages 559-560.
The case was recently cited with approval and the rule reiterated in New Jersey Mortgage and Investment Co. v. Dorsey, 33 N.J. 448 (1960).
*218 In Post v. Bacher, Torrid K-9, Inc., 48 N.J. Super. 518 (App. Div. 1957), Judge Clapp for this court commented at pages 520-521:
"The standard `clear and convincing proof,' or some variant of it, seems to have had its origin in the practice of the English Court of Chancery in connection with suits for the reformation or rescission of a written instrument because of mistake or fraud. A sterner standard may indeed be justified when dealing with written instruments. Nevertheless, that same standard is now applied to other situations of fraud, being imposed there, apparently not because of the offensive character of the charge (Kane v. Hibernia Insurance Co., supra [39 N.J.L. 697 (E. & A. 1877)]; Blackmore v. Ellis, 70 N.J.L. 264, 266 (E. & A. 1904)), but perhaps because of an assumed unlikelihood of fraudulent conduct. One may question, with McCormick, the soundness of a rule which places so heavy a burden upon one who claims to be the victim of fraud. McCormick, supra, 680 n. 11." [See McCormick, Evidence (1954).]
Vide Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 160 (App. Div. 1959).
We are satisfied that where fraud or misrepresentation is made the basis of an action at law, plaintiff is called upon to establish his claim by only a preponderance of the evidence and that a fair inference of the alleged wrongdoing is sufficient to put defendant to his proofs. See Fischetto Paper Mill Supply, Inc. v. Quigley Co., Inc., 3 N.J. 149 (1949).
In his reply brief defendant calls attention to the fact that plaintiffs in their brief rely upon the Connelly case, supra, in which the "clear and convincing" rule was enunciated, and further that plaintiff argues that his case was clearly and convincingly proved. So, suggests defendant, the "acceptance" by plaintiffs that such grade of proof was requisite, binds us to a determination on this basis. We disagree. We know of no rule which requires a reviewing court to adopt an erroneous concept of the burden of proof, even with the agreement of counsel, unless perchance the trial court improvidently made it the law of the case. Such is not the situation here. In his findings, no mention whatever was made by the trial judge of the *219 gradational quality of the proofs  "clear and convincing" vis-a-vis "preponderance,"  and none was required.
The court in an oral deliverance said:
"I think it is clearly proven that the defendant knew that he had not the money to meet these obligations and was going along in the hope that he would get enough money in to meet the obligations, or else he was not depositing the money he received in the business.
I think it is clearly shown that it was not a financially sound institution, was not a good financial risk.
I think the only question where there may be some debate is as to whether or not the plaintiff received any representations from the defendant that the institution was financially sound and that he relied on that representation. On that score there is some doubt, but taking into account the manner in which this business was being conducted and that this is a new account, it would seem incredible that this plaintiff would have advanced this credit unless there was some representation. * * *" (Emphasis added)
Defendant urges that the underscored portions of the court's remarks indicate that (1) at the time the judge reached his decision he was assailed by doubts which should have been resolved in defendant's favor, and (2) a false "representation was never found to exist as a basic fact." We are not impressed. The expression "there is some doubt," was no more than a manner of speaking of one thinking aloud as he reasoned to his conclusion. It merely gave recognition to a debatable question which in large measure was the crux of the dispute. The contention that the judge did not find the misrepresentation as a fact is likewise specious. The plain fact is that the judge did expressly find a fraudulent misrepresentation and plaintiffs' reliance thereon, when in concluding his decision he said:
"I believe the plaintiff's story that there was a representation on behalf of the defendant that the company was financially sound, that such representation was false to his knowledge, that he made the representation for the purpose of getting credit, apparently because he could no longer get any credit from Swift & Company. I think the plaintiff relied upon that representation."
We are not concerned with what mental processes induced this conclusion; rather, it is our function to determine *220 whether the evidence, as given, fairly supported the conclusion, bearing in mind the superior opportunity of the trial judge to assay the credibility of the witnesses.
We are satisfied that the proof amply supported the judgment in plaintiffs' favor.
Defendant also contends that the court erred in admitting the testimony of Mr. Masterson concerning the creditors' claims which were outstanding at the time the false representations were made. The thesis offered is that the testimony concerned a "former trial or proceeding," in which there was lacking the required identity of parties and issues and the opportunity to cross-examine the witness. Defendant misconceives the purpose of Mr. Masterson's testimony, and consequently misapplies the stated rule. The testimony, based on personal knowledge of the record in the insolvency proceedings, tended to establish that at the time the representations were made concerning the solidarity of Crest's financial position, the company was obligated to numerous creditors whose claims it was unable to meet on a current basis. If the defendant contended otherwise, he was free to cross-examine the witness on this subject.
Lastly, defendant argues that the court misplaced the burden of proof. The criticized statement is taken out of context. The full observation of the court was:
"He [plaintiff] has testified that the relied upon these representations. He delivered the goods and received the check. I think it is up to the defendant to show that he did not rely upon those representations."
This was a correct statement of the law.
Affirmed.