**BATKA, Francis J., Appellant,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY.**

No. 82–1425.

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1983.

Filed April 7, 1983.

Albert Ring, D'Aqui & Del Collo, Robert H. Malis (argued), Malis, Tolson & Malis, Philadelphia, Pa., for appellant.

Michael J. Izzo, Jr. (argued), Cozen, Begier & O'Connor, Philadelphia, Pa., for appellee.

Before GIBBONS, HUNTER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Francis J. Batka, a policyholder of two insurance policies issued by Liberty Mutual Insurance Company, appeals from a judgment in favor of Liberty Mutual Fire Insurance Company in his diversity suit for recovery of the amount of a fire loss occurring to his home and automobile. Liberty Mutual asserted defenses of arson, fraud in the presentation of the fire loss claims, and fraud in the application for the policy. The jury's verdict was in Batka's favor on the arson and fraud in the loss claim, and that aspect of the case is not before us. The jury answered affirmatively, however, two special verdict interrogatories. These asked whether Liberty Mutual had proved by a preponderance of the evidence: (1) that Batka wilfully misrepresented or concealed material facts in the application for insurance when he answered "no" to the question "Has applicant or other occupant of the household had any property or casualty insurance declined or cancelled in the past three years (excluding auto)"; and (2) that Batka wilfully misrepresented or concealed material facts in the application for insurance concerning losses caused by burglary, robbery, theft, fire, wind, vandalism, and water damage, and that the defendant reasonably relied upon the material facts in issuing the policy. The trial court entered judgment in favor of Batka for loss of the automobile, but in favor of Liberty Mutual on the home fire loss. The court also denied Batka's motion for judgment notwithstanding the verdict and for a new trial. Because we conclude that the issue of fraud in the application was submitted to the jury under an erroneous legal standard of proof, we reverse the judgment and remand for a new trial.

I.

Batka's diversity action was filed in the United States District Court for the Eastern District of Pennsylvania. The fire loss occurred, however, on November 6, 1977 in Collingswood, New Jersey. Moreover it is undisputed that the fire insurance policy was issued in that state and contains the standard provisions required by N.J.Stat. Ann. 17:36–5.20 (West Supp.1982). Most of the evidence offered by both sides in a protracted trial was addressed to the two issues, arson and false claim, which were decided by the jury in Batka's favor. We summarize the evidence with respect to Liberty Mutual's defense of fraud in the application.

On October 15, 1975 Batka was informed by American Policyholders' Insurance Company that it did not intend to renew its homeowners policy on his home, which would expire on December 13. Norman Krusen, a sales representative for Liberty Mutual, called Batka and arranged to meet him on December 10, 1975 to discuss insurance coverage. At this meeting Krusen asked Batka questions from the Liberty Mutual homeowners insurance application form, sometimes paraphrasing rather than quoting verbatim. Krusen entered Batka's answers on the form, which Batka signed. Question 13 on the application form reads:

Has applicant or other occupant of the household had any property or casualty insurance declined or cancelled by any company during the past three years excluding auto?

Krusen testified that he recalls asking if Batka had been "cancelled or non-renewed," and he checked off Batka's reply to Question 13 as no. There is no evidence

that Krusen transmitted to the Liberty Mutual underwriting department information on his variation of the inquiry. On December 10, 1975 the no answer to Question 13 was literally true, because coverage had not been cancelled by American Policyholders' Insurance Company, and Batka's only application to it had not been declined. The American Policyholders' coverage was not "nonrenewed" until three days later, although an expression of intention not to renew had been sent earlier. Moreover Liberty Mutual, on this record, could not have relied on any representation Batka made about non-renewal, since only the answer to Question 13, as written, came to the attention of its underwriting department, and the question does not mention non-renewal.

Question 17 on the application reads: During the past 3 years have you or other occupants of the household ever had a loss caused by any of these perils:

A. burglary, robbery, theft, holdup, etc.?

B. fire, wind, vandalism, riot or civil commotion, water damage, ruptured plumbing or heating, electrical wiring or appliances etc.?

. . . . .

D. other (except automobile losses)?

According to Krusen, he inquired whether Batka had any losses in the past three years. Batka's answer, as recorded by Krusen on the application, was that he had been the victim of a theft six months ago. There is evidence from which a jury could find that Batka had incurred five theft losses, one vandalism loss and one windstorm loss over three years. Question 17 is ambiguous in asking about "a loss caused by any of these perils," in that it might be construed as an inquiry as to a loss of the *type* listed, without regard to number. The question does inquire separately about types of loss, however, and a jury could find that Batka failed to reveal that there were vandalism and windstorm losses.

The application was forwarded to an underwriter for Liberty Mutual, Mr. Bax, who approved the issuance of a one year policy. When that policy expired on December 13, 1976 Liberty Mutual renewed it for another year. A Liberty Mutual underwriter testified that underwriting decisions were made on the basis of the inquiries in the application form.

Batka filed a claim following the November 6, 1977 fire, and Liberty Mutual rejected it. This lawsuit followed, with the results described above.

II.

Batka contends that the trial court erred when it denied his motion for judgment notwithstanding the verdict, because there was a complete failure of proof on a necessary element of Liberty Mutual's defense of fraud in the application. That element, it contends, is reliance on the alleged misrepresentation. We reject · that contention. We agree that whether one applied Pennsylvania law or New Jersey law the insurer would have to establish such reliance.

■ With respect to the answer to question 13, we think Liberty Mutual's defense failed, since it never established that the response given to Krusen's inquiry about non-renewals as distinguished from cancellations or declinations was ever brought to the attention of the underwriting department which made the decision to issue the policy. Question 17, however, even if it is construed as inquiring about types rather than numbers of losses, evoked an answer which can be found to have concealed the windstorm and vandalism losses. That written answer was brought to the attention of the underwriting department, and there is testimony from which it could be found that prior loss experience is a material factor in making underwriting decisions.

■ Batka contends that because Liberty Mutual's renewal policy was a new contract, as a matter of law it could not have been issued in reliance on the informa-

tion in the application for the original policy. We disagree. There is evidence from which a jury could conclude that renewals are made on the basis of the renewing company's loss experience with the policyholders. That evidence does not, however, preclude reliance on information in the original application as well. The general rule appears to be that in the absence of a new application renewal of a fire insurance policy is made on the assumption that the facts disclosed in the original application are true. *See generally* Annot., *Avoidance of Renewed Fire Policy for Breach of Warranty or Representation First Made in Original Application or Policy,* 62 A.L.R. 823 (1929). No authority has been called to our attention suggesting that either Pennsylvania or New Jersey would apply a different rule. Batka relies on *Garrison v. Farmers' Mutual Fire Insurance Co.,* 56 N.J.L. 235, 28 A. 8 (S.Ct.1893), which holds that the risk assumed under the old contract expired with it, and that each renewal is the beginning of a new risk. The case does not speak, however, to representations made to induce the issuance of a policy, but to contractual warranties, which in *Garrison* were true for the time period covered by the policy in issue. More directly in point is *United States Fidelity & Guarantee Co. v. Fridrich,* 123 N.J.Eq. 437, 198 A. 378, 381–82 (Ch.1938), announcing the general rule that underwriters may, in making renewal decisions, rely on the contents of the original application.

There was on this record a jury question whether Liberty Mutual, in issuing the renewal policy, relied on the negative response to the inquiries about vandalism and windstorm losses. Thus the trial court did not err in denying Batka's motion for judgment notwithstanding the verdict.

## III.

Batka also contends that his motion for a new trial should have been granted because the trial court erred in submitting the case to the jury with an instruction that Liberty Mutual need prove its fraudulent application defense only by a preponderance of the evidence rather than by clear and convincing evidence.

Pennsylvania requires that an insurer establish the defense of fraud in the application by "clear, precise and indubitable" evidence. *Ratay v. Lincoln National Life Insurance Company,* 378 F.2d 209 (3d Cir.1967), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1968), *aff'd on remand,* 405 F.2d 286 (3d Cir.1968); *Highmont Music Corp. v. J.M. Hoffman Co.,* 397 Pa. 345, 155 A.2d 363, 366 (1959); *Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 97 A.2d 71 (1953). Batka contends that Pennsylvania would treat this higher evidentiary burden as a matter of procedural law of the forum and apply its own rule even in a suit on a New Jersey fire insurance policy. *See, e.g., Sloniger v. Enterline,* 400 Pa. 457, 162 A.2d 397 (1960); *Crawford v. Manhattan Life Insurance Co.,* 208 Pa.Super. 150, 221 A.2d 877 (1966). Thus, he urges, *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), requires that a diversity court in Pennsylvania do likewise.

Liberty Mutual, on the other hand, contends that *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), requires that the district court identify the jurisdiction having the most significant interest in the underlying transaction, and apply the rules of that jurisdiction which reflect its public policies bearing on the transaction. That jurisdiction, Liberty Mutual contends, is New Jersey.

In this case, however, there is no need to explore Pennsylvania's choice of law rules with respect to evidentiary burdens, because there is no difference between the law of New Jersey and that of Pennsylvania applicable to a defense of fraud in the application. Both states require that the factfinder be satisfied of the elements of the defense by clear and convincing evidence.

New Jersey characterizes an insurance company's denial of a claim because of misrepresentations in an application as an attempt to rescind the policy. *Johnson v. Metropolitan Life Insurance Co.,* 53 N.J. 423, 440, 251 A.2d 257, 266 (1969). Rescission of a contract is a classic example of equitable relief. That being so, the defense being asserted by Liberty Mutual falls within the well-settled rule in New Jersey distinguishing between the evidentiary burden in an action at law for fraud and that in an equitable action. In a suit for money damages for fraud, the plaintiff need only prove a case by a preponderance of the evidence. In order to obtain equitable relief such as rescission, however, clear and convincing proof is required. A leading case recognizing the distinction is *Armel v. Crewick,* 71 N.J.Super. 213, 176 A.2d 532 (App.Div.1961). New Jersey authorities applying the clear and convincing proof standard in equity in fraud cases are legion. *See, e.g., Connelly v. Weisfeld,* 142 N.J.Eq. 406, 59 A.2d 869 (E. & A.1948) (suit seeking discharge of executor for fraud); *Fortunel v. Martin,* 114 N.J.Eq. 235, 168 A. 393 (E. & A.1933) (fraud alleged as defense in mortgage foreclosure); *Pahy v. Pahy,* 107 N.J.Eq. 538, 153 A. 519 (E. & A.1931) (allegation that divorce decree was obtained through fraudulent representation of intent to become permanent Nevada resident); *Williams v. Witt,* 98 N.J.Super. 1, 235 A.2d 902 (App.Div.1967) (action for annulment on the basis of fraud); *Post v. Bacher,* 48 N.J.Super. 518, 138 A.2d 538 (App.Div.1958) (suit alleging that defendant fraudulently induced plaintiff to rescind contract); *Brown v. Brown,* 28 N.J.Super. 165, 100 A.2d 315 (App.Div.1953) (collateral attack on validity of Nevada divorce decree); *Minter v. Bendix Aviation Corp.,* 26 N.J.Super. 268, 97 A.2d 715 (App.Div.1953) (alleged fraud upon court resulting in award of widow's benefits); *Clifton v. Cresthaven Ceme-*

*tery Association,* 6 N.J.Super. 391, 71 A.2d 655 (App.Div.1950) (alleged fraud upon court resulting in settlement decree); *Bilowit v. Dolitsky,* 124 N.J.Super. 101, 302 A.2d 774 (Ch.Div.1973) (action for annulment on the basis of fraud); *Medivox Productions, Inc. v. Hoffman-LaRoche, Inc.,* 107 N.J.Super. 47, 256 A.2d 803 (Law Div. 1969) (suit seeking, *inter alia,* rescission and restitution of a fraudulently negotiated contract); *Landau v. Rosenbaum,* 15 N.J. Super. 524, 83 A.2d 732 (Ch.Div.1951) (action on note alleging formation of corporation to defraud creditors); *Wasserman v. Franklin Trust Co.,* 142 N.J.Eq. 352, 60 A.2d 307 (Ch.1948) (action to rescind sale of chattel mortgages and promissory notes); *Lundie v. Walker,* 126 N.J.Eq. 497, 9 A.2d 783 (Ch.1939) (allegation of fraud in response to suit for construction of will); *Hayward v. Passaic National Bank & Trust Co.,* 120 N.J.Eq. 512, 186 A. 728 (Ch.1936), *aff'd,* 123 N.J.Eq. 592, 199 A. 46 (1938) (suit for nullification of promissory note, bond, and mortgage on the basis of fraud); *Fellman v. Henderson Building & Loan Association,* 120 N.J.Eq. 367, 185 A. 495 (Ch. 1936) (suit to obtain lien priority on property alleged to be fraudulently conveyed); *Kelso v. Kelso,* 95 N.J.Eq. 544, 123 A. 250 (Ch.), *aff'd,* 96 N.J.Eq. 354, 124 A. 763 (1924) (suit to impress constructive trust on property allegedly obtained by fraud). In only one of these cases—*Post v. Bacher*—is it arguable that equitable relief was not involved,[1] and in any event such a breakdown of the law/equity distinction supports rather than undermines the application of the clear and convincing standard to an effort to rescind an insurance contract.

On the other hand, the preponderance of the evidence standard is applied only when a remedy at law for fraud is sought. *See, e.g., Fischetto Paper Mill Supply, Inc. v. Quigley Co.,* 3 N.J. 149, 69 A.2d 318 (1949)

---

1. The plaintiff in *Post v. Bacher* did not seek a rescission of the contract in issue but instead requested money damages, claiming that he had been fraudulently induced to rescind the contract. 48 N.J.Super. at 519, 138 A.2d at

539. Judge Clapp's application of the clear and convincing standard was half-hearted and, in any event, not outcome-determinative since the evidence of fraud was overwhelming. 48 N.J. Super. at 520–22, 138 A.2d at 540.

(counterclaim for alleged overpayments due to overstatement of weight); *Duratron Corp. v. Republic Stuyvesant Corp.,* 95 N.J. Super. 527, 231 A.2d 854 (App.Div.1967) (suit to recover money on the basis of nonexistent collateral); *Armel v. Crewick,* 71 N.J.Super. 213, 176 A.2d 532 (App.Div.1961) (suit to recover money lost as a result of defendant's misrepresentations of solvency); *Newark Live Poultry Co. v. Fauer,* 118 N.J.L. 556, 194 A. 270 (S.Ct.1937), *aff'd o.b.,* 120 N.J.L. 187, 199 A. 12 (E. & A.1938) (suit to obtain damages resulting when defendant obtained credit through false representations); *National Premium Budget Plan Corp. v. National Fire Insurance Co.,* 97 N.J.Super. 149, 234 A.2d 683 (Law Div.1967) (action by finance company to recover from insurer for losses caused by the granting of premium loans to fictitious insureds). While none of these cases, with the exception of *Armel,* explicitly articulate the law/equity distinction, such an understanding is implicit in those cases which cite to *Armel.* Moreover, New Jersey's highest court applied a clear and convincing evidence standard in *Connelly v. Weisfeld,* but a preponderance of the evidence standard in *Fischetto.* Clearly, New Jersey has long recognized the distinction articulated in *Armel.*[2]

One New Jersey case, *New Jersey Mortgage and Investment Co. v. Dorsey,* 33 N.J. 448, 450, 165 A.2d 297, 298 (1960), requires separate mention. In that case, in reviewing an action on a negotiable note by a holder in due course against its alleged makers, the New Jersey Supreme Court stated that the makers need only establish the defense of fraud in the factum by a preponderance of the evidence. Superfi-

cially that holding might appear to support Liberty Mutual's position. But when it is examined in light of the policy reason advanced by the New Jersey courts for making the law/equity distinction with respect to the evidentiary burden for establishing fraud such support evaporates. According to the New Jersey authorities the clear and convincing standard was developed by the chancery courts to avoid easy circumvention of the Statute of Frauds and the Statute of Wills. *See, e.g., Aiello v. Knoll Golf Club,* 64 N.J.Super. 156, 161, 165 A.2d 531, 534 (App.Div.1960) (citing McCormick, *Evidence* § 320, at 679 (1954)). A written instrument meeting required formalities was deemed to be invaluable in regulating and ordering private transactions. Too easy access to the relief of rescission or reformation would produce instability in contractual relations. Thus a higher evidentiary burden was imposed before such written instruments could be set aside for fraud in their inducement. *See Post v. Bacher,* 48 N.J.Super. 518, 520, 138 A.2d 538, 540 (App.Div.1958). Fraud in the factum, on the other hand, which goes to the very authenticity of the instrument relied upon, presents an entirely different set of policy concerns. That distinction explains why the *Dorsey* court did not apply the clear and convincing evidentiary standard.

Given the fact that New Jersey treats a defense of fraud in the application as an effort on the part of the insurer to rescind a policy which is otherwise entirely genuine, and for which a premium has been paid, we are confident that New Jersey would apply the equity evidentiary standard in the instant case. Thus the trial court's instruction that the jury could find

---

**2.** Liberty Mutual has cited several cases in support of the proposition that New Jersey always permits fraud to be established by a preponderance of the evidence. Two of these cases were for money damages and thus are not inconsistent with the *Armel* rule. *Duratron Corp. v. Republic Stuyvesant Corp.,* 95 N.J.Super. 527, 231 A.2d 854 (App.Div.1967); *National Premium Budget Plan Corp. v. National Fire Insurance Co.,* 97 N.J.Super. 149, 234 A.2d 683 (Law

Div.1967). In another, the issue before the court was not fraud but arson. *Miller & Dobrin Furniture Co. v. Camden Fire Insurance Co.,* 55 N.J.Super. 205, 150 A.2d 276 (Law Div. 1959). Two other cases cited do not discuss the standard of proof required to establish fraud. *Kozlowski v. Pavonia Fire Insurance Co.,* 116 N.J.L. 194, 183 A. 154 (E. & A.1936); *State Farm Mutual Auto Insurance Co. v. Wall,* 92 N.J.Super. 92, 222 A.2d 282 (App.Div.1966).

fraud in the application by a mere preponderance of the evidence was incorrect under either Pennsylvania or New Jersey law. Such an error is "fundamental and highly prejudicial," and requires a new trial. *Ostrov v. Metropolitan Life Insurance Co.*, 379 F.2d 829, 838 & n. 10 (3d Cir.1967). An incorrect instruction as to the evidentiary standard of proof is plain error. The trial court obviously believed as much, addressing the merits of the contention in a post trial motion. The court, however, while concluding that New Jersey law governed, failed to recognize that under *Johnson v. Metropolitan Life Insurance Co.*, 53 N.J. 423, 440, 251 A.2d 257, 266 (1969), Liberty Mutual's defense of fraud in the application would be treated as an application for rescission.

### IV.

The judgment appealed from will be reversed and the cause remanded for a new trial on Liberty Mutual's defense to Batka's fire loss claim of fraud in the application.